IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| REGENCY TITLE COMPANY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:11-cv-390 |
| | § | |
| WESTCHESTER FIRE INSURANCE | § | |
| COMPANY AND THE PLUS | § | |
| COMPANIES, INC. | § | |
| | § | |
| Defendants, | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Pending before the court are Defendants' Motion for Judgment on the Pleadings (Dkt. 8), Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings (Dkt. 12), Plaintiff's Cross-Motion for Judgment on the Pleadings (Dkt. 13), Defendants' Response to Plaintiff's Cross-Motion for Judgment on the Pleadings (Dkt. 14), and Defendants' Reply in Support of Motion for Judgment on the Pleadings (Dkt. 15). Defendants' Motion for Judgment on the Pleadings is **GRANTED** and Plaintiff's Cross-Motion for Judgment on the Pleadings is **DENIED**.

**I. BACKGROUND**

Plaintiff Regency Title Company, LLC ("Regency") has brought a declaratory judgment and breach of contract action against Defendants Westchester Fire Insurance Company ("Westchester") and the Plus Companies. *Pl.'s First Am. Compl.* ¶¶ 4.2, 5.10. The dispute is a result of a denial of insurance coverage by Westchester under a professional liability policy that Regency purchased from Westchester. *Defs.' Mot. for J. on the Pleadings* ¶ 2. The policy period

was from September 1, 2009 to September 1, 2010. *Id.* The policy provides coverage for "claims made and reported" during the policy period. *Id.*

Regency seeks coverage for a lawsuit styled *Tower Custom Homes v. John A. Cook and Regency Title Company, LLC*, Cause No. 380-03132-2010 pending in the 380th Judicial Court of Collin County, Texas ("Underlying Lawsuit"). *Id.* ¶ 3. The plaintiff in the Underlying Lawsuit sued Regency for breach of contract, negligence, conversion, and breach of fiduciary duty. The Underlying Lawsuit was filed on July 29, 2010, during the policy period. *Pl.'s First Am. Compl.* ¶ 3.1.

Regency notified Westchester of the Underlying Lawsuit requesting insurance coverage and for Westchester to defend Regency. *Id.* ¶ 3.2. Westchester refused to defend or indemnify Regency. *Id.* ¶ 3.4. Westchester asserted that while the Underlying Lawsuit was brought against Regency during the policy period, the 'claim' in the Underlying Lawsuit was first made against Regency prior to the inception of the policy and is consequently not covered by the policy. *Defs.' Mot. for J. on the Pleadings* ¶ 9.

Regency filed a Third-Party Petition against Westchester in the Underlying Lawsuit. *Pl.'s First Am. Compl.* ¶ 3.5. Westchester filed a Motion to Sever Regency's cross-claim, which was granted. *Id.* ¶ 3.6. Westchester then removed the case to this court on the basis of diversity. *Id.*

## II. DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are "subject to the same standard as a motion to dismiss under 12(b)(6)." *Ackerson v. Bean Dredging LLC,* 589 F.3d 196, 209 (5th Cir.2009)

(quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.2008)). The "inquiry focuses on the allegations in the pleadings" and not on whether the "plaintiff actually has sufficient evidence to succeed on the merits." *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir.2007)).

"To survive a Rule 12(c) motion, a complaint must allege 'sufficient factual matter, accepted as true, to state a claim that is plausible on its face.'" *Hole v. Tex. A & M Univ.,* 360 Fed. Appx. 571, 573 (5th Cir.2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 667 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint ... has not shown that the pleader is entitled to relief." *Iqbal,* 556 U.S. 679. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and state a claim "plausible on its face." *Id.* at 570. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Defendants attached several documents to Defendants' Motion for Judgment on the Pleadings that Defendants would like the court to consider when reaching a decision. Plaintiff filed Plaintiff's First Amended Complaint in order to incorporate the documents attached to Defendants' Motion for Judgment on the Pleadings into the actual pleadings. *Pl.'s First Am. Compl.* ¶ 3.7. Plaintiff did this to allow the court to properly rule on Defendants' Rule 12(c) motion. *Pl.'s Resp. to Defs.' Mot. for J. on the Pleadings*, at 3; *see also Pl.'s First Am. Compl.* n. 1.

**B. Analysis**

Plaintiff (Regency) and Defendants (Westchester and the Plus Companies) agree that the sole issue in this case is whether the insurance contract between Regency and Westchester requires Westchester to defend and indemnify Regency in the Underlying Lawsuit. *Defs' Mot. for J. on the Pleadings*, at 1; *Pl's Resp. to Defs' Mot. for J. on the Pleadings*, at 1. Plaintiff and Defendant are further in agreement that the issue of coverage hinges solely on whether the plaintiff in the Underlying Lawsuit first asserted the 'claim' made against Regency in the Underlying lawsuit before the inception of the insurance policy. *Pl's Resp. to Defs' Mot. for J. on the Pleadings*, at 6; *Defs' Reply in Supp. of Mot. for J. on the Pleadings* ¶ 5. Specifically, the plaintiff in the Underlying Lawsuit filed a complaint with the Texas Department of Insurance (TDI) on September 30, 2008 (approximately one year before the inception of the insurance policy) and Plaintiff and Defendants dispute whether this complaint filed with TDI constitutes a 'claim' within the meaning of the insurance contract. *Pl's Resp. to Defs' Mot. for J. on the Pleadings*, at 6; *Defs' Reply in Supp. of Mot. for J. on the Pleadings* ¶ 5.

The complaint filed with the TDI against Regency has been included in Defendants' Motion for Judgment on the Pleadings as "Exhibit C". Additional correspondence between TDI and Regency and TDI and the plaintiff in the Underlying Lawsuit (Tower Custom Homes) are also part of "Exhibit C" and TDI's dismissal of Tower Custom Homes' complaint is included as "Exhibit D". In addition, Tower Custom Home's complaint against Regency in the Underlying Lawsuit is included as "Exhibit B" and the insurance contract between Regency and Westchester is included as "Exhibit A".

**1. TDI Complaint against Regency**

The complaint filed with TDI refers to the same nexus of facts as the Underlying Lawsuit ("Exhibit B" at 4-5; "Exhibit C" at 5) and requests that Regency pay Tower Custom Homes $100,000 or, alternatively, requests specific performance from Regency. "Exhibit C" at 5. The TDI complaint was filed on September 30, 2008. "Exhibit C" at 4. On October 2, 2008, TDI sent a letter to Tower Custom Homes indicating that TDI had received the compliant and that "an investigation [was] being initiated." "Exhibit C" at 7. Also on October 2, 2008, TDI sent a letter to Regency informing Regency that Tower Custom Homes filed a complaint against Regency. "Exhibit C" at 2. Tower Custom Homes' complaint was attached and the letter asked Regency to review the complaint and to "respond specifically to each allegation and include supporting documentation." "Exhibit C" at 2.

On October 22, 2008, TDI sent a second letter to Tower Custom Homes with Regency's response attached. "Exhibit D" at 2. The letter indicated that TDI "[had] concluded its investigation" and that TDI had found "no violation of the Texas Insurance Code." "Exhibit D" at 2. The letter indicated that TDI was not capable of resolving disputes of fact and recommended that Tower Custom Homes consult with legal counsel or seek private remedies if Tower Custom Homes was unsatisfied with the result. "Exhibit D" at 2. While the letter in "Exhibit D" indicates that Regency's response is attached, the response is not actually included in the exhibits attached to Defendants' Motion for Judgment on the Pleadings; however, Regency attached its response to the TDI complaint to Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings as "Exhibit F". Regency's response acknowledges the request for money included in Tower Custom Homes' TDI complaint. "Exhibit F" at 1-2.

**2. Regency's Insurance Contract with Westchester**

Regency's insurance policy with Westchester provides coverage for claims "first made against the insureds and reported to [Westchester] during the policy period" and excludes claims first made or reported outside the policy period. "Exhibit A" at 2. The only point of contention between Regency and Westchester is whether Tower Custom Homes' complaint to TDI constitutes a "claim" within the meaning of the contract. No other provisions of the insurance policy are at issue. *Pl's Resp. to Defs' Mot. for J. on the Pleadings*, at 6; *Defs' Reply in Supp. of Mot. for J. on the Pleadings* ¶ 5. If the TDI complaint constitutes a 'claim' under the contract, then coverage for the Underlying Lawsuit is excluded; if the complaint does not constitute a 'claim', then Westchester is contractually obligated to defend and indemnify Regency. *Pl's See Resp. to Defs' Mot. for J. on the Pleadings*, at 6; *Defs' Reply in Supp. of Mot. for J. on the Pleadings* ¶ 5. Fortunately, the insurance contract contains a definitions section which includes a definition for the term 'claim'. The policy includes five definitions for the term 'claim', but Westchester acknowledges that Tower Custom Homes' complaint to TDI could only be considered a 'claim' under definitions 1 and 4. *Defs' Reply in Supp. of Mot. for J. on the Pleadings* ¶ 8. According to the policy:

"Claim means:

>  1. a written demand against any Insured for monetary or non-monetary damages;
> 
>  4. a civil, administrative, or regulatory investigation against any Insured commenced by the filing of a notice of charges, investigative order, or similar document;" "Exhibit A" at 16.

### 3. "Claims Made" Policies under Texas Law

Under Texas law, interpretation of an insurance policy is a matter of law for the court to determine. *Lubbock County Hosp. Dist. v. Nat'l Union Fire Ins. Co.,* 143 F.3d 239, 241-42 (5th Cir.1998). Texas law uses the "eight corners" rule to determine whether an insurance company has a duty to defend under an insurance contract. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 744-45 (5th Cir. 2011) *certified question answered*, 370 S.W.3d 377 (Tex. 2012). The "eight corners" rule requires that the "four corners" of the complaint allege facts that could possibly assert a claim within the scope of coverage of the "four corners" of the insurance policy. *Id.* at *745*. In this case, the "four corners" of the complaint contain Regency's assertion that Westchester is obligated by the provisions found within the "four corners" of Regency's policy with Westchester to defend and indemnify Regency in the Underlying Lawsuit. If the aforementioned TDI complaint constitutes a 'claim' within the meaning of the policy, the policy excludes coverage for the Underlying Lawsuit.

Texas law requires that the "eight corners" rule be "applied liberally in favor of the insured, with any doubts resolved in favor of the insured. If any allegation in the complaint is *even potentially* covered by the policy then the insurer has a duty to defend the insured." *Id.* (quoting *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) (internal citations omitted) (emphasis in original)). If an insurance policy is susceptible to more than one reasonable interpretation, the court must adopt the construction in favor of the insured. *Id.* at 744 (citing *Fiess v. State Farm Lloyds*, 202 S.W. 3d 744, 746 (Tex. 2006)).

The insured carries the burden of demonstrating to the court that a claim is potentially within the scope of policy coverage. *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923 (N.D. Tex. 2009). However, it is the insurer that carries the burden of establishing that "the plain

language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule." *Id.* (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). In addition, "[e]xclusions [in the insurance policy] are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Id.* (quoting *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,* 538 F.3d 365, 370 (5th Cir.2008). If an exclusion is ambiguous, the court is obligated to use whichever interpretation is favored by the insured, as long as the insured's interpretation is reasonable. *Id.* (citing *Gore Design Completions*, 538 F.3d at 371. In this case, claims first made before the inception of the policy are excluded from coverage. The court must construe the exclusion of previously made claims narrowly and if the court finds the exclusion ambiguous, then the court must interpret the exclusion as urged by Regency. Specifically, if the court finds that the TDI complaint is even potentially *not* a claim within the meaning of the policy, the court must find in favor of Regency. Westchester carries the burden of demonstrating that the exclusion is applicable to this case and is unambiguous.

However, an exclusion is ambiguous only if it is clearly susceptible to multiple reasonable interpretations. *Id.* The mere fact that two parties wish to apply or interpret an exclusion differently does not necessarily indicate that the exclusion is ambiguous as a matter of law. *Id.* (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998). "[The] rules favoring the insured…are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, then [the rules favoring the insured] do not apply." *Id.* (quoting *Am. States Ins. Co.* 133 F.3d at 369). In addition, "[c]ourts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a

8

consequence." *Id.* (quoting *Ohio Cas. Group of Ins. Companies v. Chavez*, 942 S.W.2d 654, 658 (Tex. App.—Houston [14th Dist.] 1997, writ denied). Furthermore, if a policy provision is susceptible to only one reasonable interpretation, the court is obligated to give the words their "plain meaning" even if this means coverage is denied. *Evanston Ins. Co.*, 645 F.3d at 744 (citing *Fiess* 202 S.W. 3d at 746).

**4. The TDI Complaint under the First Definition of 'Claim'**

The first definition of claim in the insurance contract is: "a written demand against any insured for monetary or non-monetary damages." "Exhibit A" at 16. This definition has three elements (1) that a demand is made against the Insured; (2) that the demand is made in writing; and (3) that the demand is made for monetary or non-monetary damages. Regency does not dispute that the second and third elements have clearly been met. *See* "Exhibit C" at 5. Regency disputes that the TDI claim constituted a "demand against [Regency]." *Pl's Resp. to Defs' Mot. for J. on the Pleadings* at 6. Regency contends that Tower Custom Homes never sent a written demand directly to Regency prior to the underlying lawsuit and Westchester does not dispute this; instead Westchester contends that the TDI complaint itself constituted a written demand against Regency within the meaning of the contract. *Pl's Resp. to Defs' Mot. for J. on the Pleadings* at 7; *Defs' Reply in Supp. of Mot. for J. on the Pleadings* at 4-5. It is Regency's position that since the complaint was sent to a third party, the complaint does not constitute a "demand against an insured." *Pl's Resp. to Defs' Mot. for J. on the Pleadings* at 6.

Westchester cites to *Precis, Inc. v. Federal Ins. Co.*; 184 Fed. Appx. 439 (5th Cir. 2006) for support. *Defs' Reply in Supp. of Mot. for J. on the Pleadings* at 6. The facts in *Precis* are similar in many ways to the instance case except that the written demands in *Precis* were made directly to the insured. 184 Fed. Appx. at 440-41. Regency correctly points out that since

Regency's position hinges on the demand being sent to Regency through a third party (TDI), *Precis* provides little help for the court. *Pl's Resp. to Defs' Mot. for J. on the Pleadings* at 7

It is worth noting that the definition in the policy does not say "demand to an insured", or a "demand sent to insured", "or a demand on an insured", but a "demand *against* any insured." "Exhibit A" at 16 (emphasis added). The complaint sent to TDI by Tower Custom Homes demanded money or specific performance and, while the complaint was made *to* TDI, it was made specifically *against* Regency. "Exhibit C" at 3-5. The TDI form filled out by Tower Custom Homes even contains a space labeled "Complaint is Against" where Tower Custom Homes listed Regency Title and included Regency's phone number and address. "Exhibit C" at 3.

Regency maintains the position that since the complaint was not made directly to Regency, that it did not constitute a claim within the meaning of the policy. *Pl's Resp. to Defs' Mot. for J. on the Pleadings* at 7. Regency is asking the court to add additional requirements to the definition in the policy. The policy does not indicate that the demand must be made directly to the insured. *See* "Exhibit A" at 16. The Exhibits indicate that Tower Custom Homes sent TDI a demand for money from Regency ("Exhibit C" at 3-5), that TDI sent that demand to Regency ("Exhibit C" at 2), that Regency responded directly to the demand ("Exhibit D" at 2), and that TDI sent Regency's response to Tower Custom Homes ("Exhibit D" at 2). Tower Custom Homes made a demand against Regency, Regency was informed of the demand, and Tower Custom Homes was informed that Regency was informed of its demand. Had Tower Custom Homes sent the demand to Regency through the U.S. mail with a return receipt requested, the exact same results would have occurred, except that Regency may or may not have sent Tower a response.

If the exclusion in this policy is ambiguous, the court must find in favor of coverage. *Carolina Cas. Ins. Co.* 603 F. Supp. 2d at 923. However, Regency asks the court to find ambiguity in an insurance policy where there is none. The exclusion must be clearly susceptible to at least two different reasonable interpretations to be ambiguous. *Id.* If a policy provision is susceptible to only one reasonable interpretation, the court is obligated to give the words their "plain meaning" even if this means coverage is denied. *See Evanston Ins. Co.*, 645 F.3d at 744. Regency's arguments hinge on the court reading additional requirements into the definition of 'claim' found within the policy. As a result, Regency has failed to establish a second reasonable interpretation of the first definition of 'claim' under the policy. The definition is therefore unambiguous and indicates that coverage should be denied. *See Carolina Cas. Ins. Co.* 603 F. Supp. 2d at 923.

**5. The TDI Complaint under the Fourth Definition of 'Claim'**

The fourth definition of claim in the insurance contract is: "a civil, administrative, or regulatory investigation against any insured commenced by the filing of a notice of charges, investigative order, or similar document." "Exhibit A" at 16. This definition requires that three things occur: (1) an investigation must occur; (2) the investigation must be civil, administrative, or regulatory in nature; and (3) the investigation must be commenced by the filing of a notice of charges, investigative order, or similar document. Regency does not dispute that the actions taken by TDI were administrative or regulatory in nature or that the complaint sent to Regency by TDI constituted a "similar document" within the meaning of the definition in the policy. "Exhibit A" at 16; *See Pl's Resp. to Defs' Mot. for J. on the Pleadings*, at 7-10. But Regency does argue that the first element has not been met. *Pl's Resp. to Defs' Mot. for J. on the Pleadings* 9.

Specifically, Regency contends that the actions taken by TDI did not constitute an investigation within the meaning of the policy. *Id.* at 7-10. Regency emphasizes to the court that TDI referred to its actions as an "evaluation" in TDI's letter to Regency. *Id.* at 8; "Exhibit C" at 2. However, in both of the letters that TDI sent to Tower Custom Homes, TDI directly referred to its actions as an investigation, specifically saying: "an investigation is being initiated," "Exhibit C" at 7; and "[t]his office has concluded its investigation," "Exhibit D" at 2. Based on this language, TDI considered its actions to be an investigation. While this is not dispositive, it is highly suggestive.

Regency also suggests that TDI's actions could not be considered an investigation because of the brevity of TDI's involvement in the matter, the cursory nature of TDI's inquiry, and the speed with which TDI dismissed the complaint. *Pl's Resp. to Defs' Mot. for J. on the Pleadings* at 8. Regency specifically cites, among other things, that TDI only reviewed Tower Custom Homes' complaint and Regency's response, that TDI suggested that Tower Custom Homes seek a private remedy, that TDI found no violation of Texas insurance laws, and that TDI was taking no action against Regency as evidence that no investigation occurred. *Id.* None of these points, however, indicated that there was no investigation. The definition in the policy does not indicate that a detailed investigation or an exhaustive investigation must take place, but merely that there is an investigation. "Exhibit A" at 16. A cursory investigation is a still an investigation within the plain meaning of the word.

Furthermore, TDI's actions are consistent with an investigation. TDI sent a letter to Regency asking specifically for information from Regency and that Regency supply TDI with "supporting documentation". "Exhibit C" at 2. TDI was attempting to obtain information from Regency. Such an action could naturally be considered the first step in a "systematic

examination", which is one definition for "investigation" that Regency has put forward. *Pl's Resp. to Defs' Mot. for J. on the Pleadings* n. 7. Moreover, the very fact that TDI found no violation of the Texas insurance laws indicates that TDI must have conducted some type of investigation in order to make such a finding.

In *Munsch Hardt Kopf & Harr P.C. v. Executive Risk Specficality Ins. Co.*, the court denied coverage under a similar insurance policy and found that a claim had been previously made when a plaintiff in an underlying lawsuit sent a complaint to the Equal Employment Opportunity Commission (EEOC), the EEOC sent a copy of the complaint to the insured, and the EEOC then advised the plaintiff of her right to sue the insured. 2007 WL 708851 (N.D. Tex. 2007). If the exclusion in this contract is ambiguous, the court must find in favor of coverage. *Carolina Cas. Ins. Co.* 603 F. Supp. 2d at 923. However, Regency again asks the court to find ambiguity in an insurance policy where there is none. The exclusion must be clearly susceptible to at least two different reasonable interpretations to be ambiguous. *Id.* If a policy provision is susceptible to only one reasonable interpretation, the court is obligated to give the words their "plain meaning" even if this means coverage is denied. The court finds that Regency's arguments fail to establish a second reasonable interpretation of the fourth definition of 'claim' under the policy. *See Evanston Ins. Co.*, 645 F.3d at 744.

### III. CONCLUSION

"To survive a Rule 12(c) motion, a complaint must allege 'sufficient factual matter, accepted as true, to state a claim that is plausible on its face.'" *Tex. A & M Univ.,* 360 Fed. App'x at 573 (quoting *Iqbal,* 556 U.S. at 667). Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. 678. The complaint by Tower Custom Homes to

TDI clearly constituted a demand against Regency, and the actions of TDI clearly constituted an investigation consistent with the definition of 'claim' in the policy. Since the insurance policy issued by Westchester to Regency unambiguously indicates that the policy does not cover claims made before the inception of the policy, and since the 'claim' in the Underlying Lawsuit was clearly asserted against Regency prior to the inception of the policy, Regency's declaratory judgment and breach of contract action cannot survive Westchester's Rule 12(c) motion. The insurance policy unambiguously indicates that Regency's claims against Westchester fail as a matter of law. Therefore, Regency's First Amended Complaint does not state a claim that is plausible on its face. Defendant's Motion for Judgment on the Pleadings (Dkt. 8) is **GRANTED** and Plaintiff's Cross-Motion for Judgment on the Pleadings (Dkt. 13) is **DENIED.**

    **IT IS SO ORDERED.**

    **SIGNED this the 15th day of November, 2013.**

_/s/ Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE